UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
J & J SPORTS PRODUCTIONS, INC.,                     :
                                                     :
                          Plaintiff,     :    REPORT AND
                                                     :    RECOMMENDATION
   -against-                                       :
                                                     :    No. 19-CV-05220-EK-JRC
EL TRIO CORP., an unknown business entity d/b/a EL  :
TRIO SPORTS BAR,                                     :
                                                     :
                          Defendant.    :
                                                     :
-------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

       Plaintiff J & J Sports Productions, Inc. ("plaintiff") brings this action against El Trio Corp., an unknown business entity d/b/a El Trio Sports Bar ("defendant"), alleging that defendant, in violation of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553 and 605, unlawfully intercepted and broadcasted the "Program" featuring the World Boxing Organization's World Super Welterweight Championship Fight between Saul Alvarez and Liam Smith (the featured match and undercard bouts collectively referred to as the "Program"). Upon plaintiff's application and in light of defendant's failure to defend this action, the Clerk of the Court entered defendant's default on July 10, 2023. Currently pending before this Court, on a referral from the Honorable Eric R. Komitee, is plaintiff's motion for default judgment.[1] See Mot. for Default J., Dkt. 35. For the reasons set forth below, this Court respectfully recommends granting plaintiff's motion.

---

[1] On August 28, 2023, plaintiff voluntarily dismissed its claims against co-defendant Juan G. Briones. See Dkt. 33.

I.  **Relevant Factual and Procedural Background**

The following facts are drawn from plaintiff's complaint and are accepted as true for purposes of this motion.

Plaintiff J & J is a California corporation with its principal place of business in San Jose, California. *See* Compl. ¶ 6, Dkt. 1. Defendant is a domestic business corporation formed under the laws of the State of New York and operates a commercial establishment doing business as El Trio Sports Bar at 102-01 44th Avenue, Corona, New York. *See id.* ¶¶ 7-8. Under a license agreement with Golden Boy Promotions, LLC (the "License Agreement"), plaintiff was granted the exclusive nationwide commercial rights (closed-circuit) to distribute the telecast of the Program at commercial establishments such as theaters, arenas, bars, clubs, lounges, and restaurants throughout New York. *See id.* ¶ 19. Commercial establishments in New York could only exhibit the Program if authorized by plaintiff. *See id.* ¶ 21. Plaintiff marketed and distributed its closed-circuit rights and contracted with various establishments throughout New York to grant the right to broadcast the Program in exchange for a fee. *See id.* ¶ 22.

The transmission of the Program was electronically coded and had to be decoded with electronic equipment for a commercial establishment to receive the signal and view the Program clearly. *See id.* ¶ 24. The Program originated via satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal. *See id.* If a commercial establishment was authorized by plaintiff to receive the Program, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's satellite or cable providers was notified to unscramble the reception of the Program for the establishment. *See id.* ¶ 25. The Program could only be

exhibited in a commercial establishment in New York if that establishment entered into an agreement with plaintiff and paid the requisite licensing fee. *See id.* ¶ 21.

On Saturday, September 17, 2016, defendant unlawfully intercepted, received, and broadcasted plaintiff's Program at El Trio Sports Bar. *See id.* ¶¶ 14, 26.[2] On the night of the Program, El Trio Sports Bar broadcasted the Program on one or more projector television screens and sold alcoholic and non-alcoholic beverages to patrons. *See id.* ¶¶ 26-27. The commercial fee for an establishment the size of El Trio Sports Bar to broadcast the Program lawfully was $1,800. *See id.* ¶ 28. Neither the defendant, nor its principal, Juan G. Briones, paid the fee to plaintiff. *See id.*

On September 12, 2019, plaintiff commenced this action alleging, *inter alia*, that defendant had unlawfully intercepted, received, and exhibited the Program in violation of 47 U.S.C. § 605(a) (Count I) and 47 U.S.C. § 553(a) (Count II). *See id.* ¶¶ 29-45. Defendant El Trio Corp. was served on September 26, 2019, via the New York Secretary of State. Dkt. 6.

Defendant initially appeared in this case through counsel, and answered the complaint on November 21, 2019. *See* Dkt. 8. Counsel subsequently moved to withdraw as counsel, Dkt. 16, and on June 27, 2022, the Court granted counsel's motion. *See* Dkt. entry dated June 27, 2022. The Court subsequently warned defendant that corporate defendants could not proceed *pro se* and that it would need to retain counsel. *See* Dkt. entry dated June 27, 2022. Over the course of one year, defendant failed to retain new counsel. In light of defendant's failure to retain counsel, on July 10, 2023, the Clerk of the Court entered a Certificate of Default as to defendant El Trio Corp. *See* Dkt. 29. On September 19, 2023, plaintiff moved for default judgment. Dkt. 35.

---

[2] Plaintiff's investigator, Gary Joseph, observed defendant broadcasting the fight between Gabriel Rosado and Willie Monroe, one of the undercard bouts before the featured event between Alvarez and Smith. Affidavit of Gary Joseph ("Joseph Aff."), Dkt. 35-1 at ECF pages 33-34; Pl.'s Mem., Dkt. 35-2 at ECF page 2; Compl. ¶ 26. The investigator was not required to pay an admission fee or cover charge. *See* Joseph Aff., Dkt. 35-1 at ECF page 33.

## II. Discussion

### A. Liability

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2). When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotation marks and citation omitted).

Defendant El Trio Corp. may not appear *pro se*, and must be represented by an attorney. *See Phillips v. Tobin*, 548 F.2d 408, 411 (2d Cir. 1976); *Khurana v. JMP USA, Inc.*, No. 14-CV-4448, 2017 WL 1251102, at *4-*5 (E.D.N.Y. Apr. 5, 2017). Although El Trio Corp. was originally represented by counsel and filed an answer to the complaint, since counsel's withdrawal, defendant has not appeared or otherwise defended itself in the action. The corporate defendant's failure to obtain counsel itself constitutes a failure to defend. *See Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967). Thus, the Clerk of the Court properly entered defendant's default.

4

**Federal Communications Act, Sections 605(a) and 553(a)**

Plaintiff has alleged violations of the FCA under sections 605(a) and 553(a).  Compl. ¶¶ 30-45.  Section 605 "generally prohibits the unauthorized use or publication of wire or radio communications," *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), while section 553(a) prohibits theft of "service[s] offered over a cable system."  *J & J Sports Prods., Inc. v. Ferreiras*, No. 15-CV-6546, 2018 WL 6168557, at *9 (E.D.N.Y. Nov. 20, 2018) (internal quotation marks and citation omitted).

"The term 'radio communication,' as used in [section 605(a)], has long been understood to include satellite transmissions."  *J & J Sports Prods., Inc. v. Nacipucha*, No. 17-CV-1186, 2018 WL 2709222, at *3 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 2709200 (E.D.N.Y. June 5, 2018); *see also Garden City Boxing Club, Inc. v. Focused Enters., Ltd.*, No. 06-CV-4874, 2007 WL 1655647, at *2 (E.D.N.Y. June 6, 2007) ("Because [plaintiff] alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a)").  Thus, to make a claim under section 605(a), plaintiff must have transmitted the Program by satellite and defendant must have intercepted it without authorization.  Meanwhile, section 553(a)(1) prohibits the unauthorized interception or receipt of "any communications service offered over a cable system."  47 U.S.C. § 553(a)(1).  "Whereas section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication."  *J & J Sports Prods., Inc. v. La Ruleta, Inc.*, No. 11-CV-4422, 2012 WL 3764062, at *2 (E.D.N.Y. Aug. 7, 2012), *report and recommendation adopted*, 2012 WL 3764515 (E.D.N.Y. Aug. 29, 2012).

5

"The same conduct by a defendant may violate both § 553(a)(1) and § 605(a). In such cases, damages should only be awarded pursuant to § 605(a)," which provides for a greater recovery.[3] *Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85, 2019 WL 885930, at *2 (E.D.N.Y. Feb. 22, 2019) (internal citations omitted); *see also Sykes*, 997 F.2d at 1009 ("the court should grant [plaintiff's] request for damages under § 605(e) instead of granting the lesser damages available under § 553"); *J & J Sports Prods., Inc. v. El Sonador Café Rest., Inc.*, No. 17-CV-3357, 2017 WL 6397731, at *2 (E.D.N.Y. Dec. 14, 2017) ("Plaintiff is entitled to damages under Section 605, so the Court need not address Plaintiff's other claims [under section 553]").

Here, plaintiff alleges that defendant intercepted its signal, which "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." Compl. ¶ 24. Defendant then displayed the Program on one or more television screens in a commercial setting without plaintiff's permission. *See id.* ¶¶ 26, 28; Affidavit of Joseph M. Gagliardi ("Gagliardi Aff.") at ¶¶ 7, 19, Dkt. 35-3. Plaintiff's allegations are sufficient to demonstrate that the communication originated via satellite. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131-33 (2d Cir. 1996); *Bernal*, 2019 WL 885930, at *3 ("[A]ny one of the various technologies by which [plaintiff's] satellite broadcast could have been intercepted is sufficient to

---

[3] Sections 553 and 605 set forth similar remedial schemes, but differ in "(1) the range of statutory damages available to an aggrieved party, and (2) the respective provisions for attorneys' fees." *G&G Closed Circuit Events, LLC v. Pacheo*, No. 20-CV-7457, 2021 WL 4296649, at *3 (S.D.N.Y. Sept. 20, 2021). Under both sections, the aggrieved party may elect to recover either actual damages and any profits that are attributable to the violation, or statutory damages. *See* 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i). While section 553 provides statutory damages "in a sum of not less than *$250* or more than $10,000," *id.* § 553(c)(3)(A)(ii) (emphasis added), section 605 provides statutory damages "in a sum of not less than *$1,000* or more than $10,000," *id.* § 605(e)(3)(C)(i)(II) (emphasis added). Further, while section 553 allows for additional damages in "an amount of not more than *$50,000*" for violations committed "willfully and for purposes of commercial advantage or private financial gain," *id.* § 553(c)(3)(B) (emphasis added), section 605 permits additional damages in "an amount of not more than *$100,000*" in cases in which the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," *id.* § 603(e)(3)(C)(ii). With respect to attorney's fees and costs, a court "may" direct recovery to an aggrieved party who prevails under section 553, *id.* § 553(c)(2)(C), whereas a court "shall" direct recovery in the same situation under section 605, *id.* § 605(e)(3)(B)(iii).

6

establish liability."). As plaintiff has alleged that its signal for the Program originated via satellite and the defendant intercepted and broadcasted the Program without authorization, this Court recommends finding that plaintiff has stated a claim under sections 605(a) and 553(a)(1), and holding defendant El Trio Sports Bar liable for the damages recommended below. *See G&G Closed Cir. Events, LLC v. Sanchez Torres*, No. 20-CV-3487, 2021 WL 101200, at *2 (S.D.N.Y. Jan. 11, 2021) ("Where, as here, the intercepted program is transmitted via cable and satellite, sections 553 and 605 both apply"); *Pacheo*, 2021 WL 4296649, at *2.

### B. Damages

Unlike those allegations concerning liability, allegations relating to damages are not deemed admitted upon default. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Rather, damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *See Greyhound Exhibitgroup*, 973 F.2d at 158; Fed. R. Civ. P. 55(b)(2). However, "these steps are not necessary as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment." *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019) (alterations in original) (internal quotation marks and citation omitted). A court may make this determination upon a review of detailed affidavits and documentary evidence. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Section 605 provides that a plaintiff may recover statutory damages "of not less than $1,000 or more than $10,000 . . . for each violation." 47 U.S.C. § 605(e)(3)(C)(i). In addition to

statutory damages, a plaintiff may recover enhanced damages in "an amount of not more than $100,000 for each violation" where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* § 605(e)(3)(C)(ii). "Courts have interpreted the showing of an event on a single night as one violation for the purposes of statutory and enhanced damages." *Bernal*, 2019 WL 885930, at *3 (quotation marks omitted) (quoting *El Sonador*, 2017 WL 6397731, at *3). In plaintiff's proposed default judgment order, plaintiff seeks $6,600 in statutory damages and $19,800 in enhanced damages, or three times the requested statutory damages, for a single violation. *See* "Default Judgment (proposed)," Dkt. 35-1 at ECF page[4] 30; Pl.'s Mem. of Law in Supp. of Appl. for Default J. ("Pl.'s Mem."), Dkt. 35-2 at ECF page 5 ("Plaintiff requests $6,600 in statutory damages and $19,800 in enhanced statutory damages, a three times multiplier of the statutory damages award.").

### 1. Statutory Damages

"District courts are vested with 'broad discretion' in determining the amount of statutory damages to be awarded under § 605(e)(3)(C)(i)(II)." *Bernal*, 2019 WL 885930, at *4. To determine statutory damages, courts typically calculate the (1) flat-fee rate that plaintiff would have charged the defendant, and (2) the per-person rate that each individual patron would have had to pay to view the transmission at home, and then award the greater of the two. *See J & J Sports Prods., Inc. v. Hot Shotz Sports Bar Inc.*, No. 17-CV-4170, 2018 WL 5020175, at *7 (E.D.N.Y. July 13, 2018) (collecting cases). The flat-fee rate is "the amount that the establishment would have paid to license the event and broadcast it legally." *Bernal*, 2019 WL 885930, at *4. To calculate the per-person amount, the court "multiplies the number of patrons

---

[4] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

in the establishment by the fee that an average customer would pay to view the fight at home on a pay-per-view channel." *Id.*

Here, plaintiff has not provided any evidence as to the residential fee in its submissions, preventing the Court from calculating the per-person amount, but has submitted an exhibit showing the rates charged to commercial customers to broadcast the event legally. *See* Dkt. 35-1 at ECF page 28 ("Rate Card"); *see also* Compl. at ECF page 22. As set forth in plaintiff's complaint, the licensing fee (hereafter referred to as "licensing fee" or "commercial fee") to broadcast lawfully the Program for an establishment the size of El Trio Sports Bar totaled $1,800. *See* Compl. ¶ 28 ("The commercial fee for an establishment of the size of El Trio Sports Bar to broadcast the Program lawfully was $1,800.00."); *see also* Rate Card. Thus, plaintiff's request for $6,600 in statutory damages amounts to more than three times what plaintiff alleged in the complaint defendant would have paid as a licensing fee.[5]

---

[5] The sought-after statutory damages and applicable licensing fee were a moving target throughout plaintiff's submissions. In plaintiff's proposed default judgment order, plaintiff sought $6,600 in statutory damages. "Default Judgment (proposed)," Dkt. 35-1 at ECF page 30. Similarly, in plaintiff's memorandum of law, plaintiff confirmed its request for $6,600 in statutory damages. Pl.'s Mem., Dkt. 35-2 at ECF page 5. However, a few pages later, plaintiff also requested "statutory damages" in the amount of "*$8,400*," which plaintiff alleged was three times the licensing fee of "$2,800." Pl.'s Mem., Dkt. 35-2 at ECF page 8 (citing Gagliardi Aff. ¶ 8) (emphasis added). With respect to the purported licensing fee, plaintiff quoted inconsistent rates. In the very next paragraph, plaintiff stated that the licensing fee here totaled "*$2,200*," not $2,800. Pl.'s Mem., Dkt. 35-2 at ECF page 8 (emphasis added). Plaintiff thereafter confirmed that the applicable fee here was $2,200, stating as follows: "The underlying facts in *McCausland* are similar to those herein. . . . The commercial fee was the same, *$2,200*." Pl.'s Mem., Dkt. 35-2 at ECF page 10 (emphasis added). Plaintiff's submissions cite yet a third alleged licensing fee. In the complaint itself, plaintiff alleged that the commercial fee totaled "$1,800." Compl. ¶ 28. Plaintiff attached to its complaint a "rate card" that purportedly charged $1,800 for establishments with capacity of 1-100 patrons, and $2,800 for establishments with capacity of 101-200 patrons. Compl. at ECF page 22. Plaintiff's investigator's affidavit states that El Trio Sports Bar had a capacity of 150 people. *See* Joseph Aff., Dkt. 35-1 at ECF page 34.

Because the Court calculates the statutory damages based on the amount of the licensing fee, the Court adopts the amount of the licensing fee cited in the complaint (*i.e.*, $1800). Compl. ¶ 28. The Court adopts this approach due to plaintiff's failure to put defendant on notice that it would seek damages based on a higher licensing fee (*e.g.*, $1,800 v. $2,200 v. $2,800), *see* Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"), and in light of the significant inconsistencies in plaintiff's submissions both with respect to the amount of plaintiff's requested statutory damages and the purported applicable licensing fee as discussed above. *See, e.g.*, Compl. ¶ 28; Gagliardi Aff. ¶ 8; Pl.'s Mem. of Law, Dkt. 35-2 at ECF pages 5, 8, 10; "Default Judgment (proposed)," Dkt. 35-1 at ECF page 30; *see also J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc.*, No. 17-CV-2196, 2018 WL 2078482, at *8 & n.12 (E.D.N.Y. Feb. 27, 2018) (awarding

Plaintiff attempts to justify its request for three times the licensing fee by arguing that (1) the flat-fee rate undervalues the Program, fails to compensate plaintiff adequately, and conflates the two separate statutory sections providing for the choice between actual damages and statutory damages; and (2) the per-person rate would understate the seriousness of defendant's conduct. *See* Pl.'s Mem., Dkt. 35-2 at ECF pages 6-8. There is no authority in this Circuit, however, supporting plaintiff's request to treble the base statutory award; courts in this Circuit typically award a multiple of the base award under section 605 only when awarding enhanced damages. *See, e.g., Hot Shotz*, 2018 WL 5020175, at *8-*9. Plaintiff acknowledges as much in its memorandum of law. *See* Pl.'s Mem., Dkt. 35-2 at ECF page 16. Moreover, plaintiff's argument in support of trebling the statutory damages award relies on the same justification courts use in awarding enhanced damages. *See Joe Hand Promotions, Inc. v. Kings Point Rest., Inc.*, No. 17-CV-01870, 2017 WL 6611705, at *6 (E.D.N.Y. Nov. 3, 2017) (noting in determining enhanced damages that awarding statutory damages alone "would understate the seriousness of defendants' conduct, particularly since, as plaintiff contends, plaintiff has suffered intangible losses in the form of 'business investment, business opportunities, reputation, and goodwill'").

Although the Court has the discretion to award a flat-fee rate different from the amount of the licensing fee, plaintiff has not persuaded the Court to depart from the established practice in this Circuit of awarding statutory damages in the amount of the licensing fee, particularly given the availability of enhanced damages. *See, e.g.*, *Pacheco*, 2021 WL 4296649, at *3 (awarding statutory damages equal to the licensing fee); *Sanchez Torres*, 2021 WL 101200, at *3 (same); *J & J Sports Prods., Inc. v. Rinconcito Dominicano*, No. 18-CV-2319, 2021 WL 7906506, at *2-*3

---

statutory damages based on lower of two licensing fees proffered by plaintiff), *report and recommendation adopted*, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018).

10

(E.D.N.Y. June 24, 2021). This Court, therefore, respectfully recommends awarding plaintiff **$1,800** in statutory damages.

### 2. Enhanced Damages

Plaintiff also is entitled to enhanced damages given defendant's willful violation of the statute. Willfulness is generally "presumed in cases arising under § 605 where the defendant defaults." *Bernal*, 2019 WL 885930, at *5; *see Joe Hand Promotions, Inc. v. Crisis Bar LLC*, No. 21-CV-6563, 2023 WL 2969308, at *10 (E.D.N.Y. Jan. 19, 2023). In calculating enhanced damages, "[c]ourts in this Circuit typically award [] a multiple of the statutory damages award." *Hot Shotz*, 2018 WL 5020175, at *9 (collecting cases). A court's decision to award an amount equal to, double, or triple the statutory damages depends on the presence of factors such as "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Id.*; *see Crisis Bar*, 2023 WL 2969308, at *11.

The presence of at least one of these factors can support an award in an amount three times the statutory damages award, particularly when defendant's unlawful activity attracts a large group of patrons. *See J & J Sports Prods., Inc. v. AAA Blue Iguana Bar Lounge, Inc.*, No. 13-CV-02738, 2014 WL 4536741, at *5-*6 (E.D.N.Y. Sept. 10, 2014) (awarding enhanced damages of $6,600, three times the statutory damages recommended, in case where 25 patrons were observed and "plaintiff's submissions and defendants' default suffice to support the inference that defendants displayed the boxing match for commercial gain in order to attract customers to patronize their establishment").

Here, plaintiff alleges that El Trio Sports Bar broadcasted the Program on two television screens with 40 or more patrons in attendance, and that EL Trio Sports Bar sold alcoholic and non-alcoholic beverages to its patrons during the Program. *See* Compl. ¶¶ 26-27; Joseph Aff., Dkt. 35-1 at ECF pages 33-34. The complaint also alleges that the Program resulted in increased profits or financial benefit to the defendant. *See* Compl. ¶ 16. Accordingly, this Court respectfully recommends awarding plaintiff enhanced damages of **$5,400**, an amount three times the statutory award ($1,800 x 3).[6] *See J & J Sports Prods., Inc. v. Leon*, No. 19-CV-10084, 2022 WL 6995616, at *3 (S.D.N.Y. Oct. 12, 2022); *Joe Hand Promotions, Inc. v. Batista*, No. 20-CV-6460, 2021 WL 3855315, at *9 (S.D.N.Y. July 23, 2021), *report and recommendation adopted*, 2021 WL 3855311 (S.D.N.Y. Aug. 27, 2021).

## Conclusion

For the reasons stated herein, this Court respectfully recommends granting plaintiff's motion for default judgment and entering default judgment against defendant El Trio Corp. in the total amount of **$7,200**, comprised of $1,800 in statutory damages and $5,400 in enhanced damages. The Court further recommends awarding plaintiff post-judgment interest, but denying pre-judgment interest.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve on defendant a copy of this Report and

---

[6] Plaintiff does not seek an award of attorney's fees. *See* Dkt. 36. In a footnote in its memorandum of law, plaintiff requests an award of "pre- and post-judgment interest." Pl. Mem., Dkt. 35-2 at ECF page 5; *see* "Default Judgment (proposed)," Dkt. 35-1 at ECF page 31. Most courts in this District have denied requests for pre-judgment interest on the grounds that statutory damages provide a sufficient deterrent without the need for an award of pre-judgment interest. *See J & J Sports Prods., Inc. v. Dominguez*, No. 19-CV-5110, 2020 WL 6434735, at *6 (E.D.N.Y. Sept. 16, 2020), *report and recommendation adopted*, 2020 WL 6400700 (E.D.N.Y. Nov. 1, 2020); *J & J Sports Prods., Inc. v. Shots Pool Hall, Inc.*, No. 16-CV-5067, 2018 WL 1115915, at *5 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted*, 2018 WL 1116551 (E.D.N.Y. Feb. 27, 2018). On the other hand, an award of post-judgment interest is mandated by 28 U.S.C. § 1961(a). *See Dominguez*, 2020 WL 6434735, at *7.

Recommendation by overnight mail and first-class mail at its last known address and to file proof of service on ECF by **August 23, 2024**.

Any objections to the recommendations made in this Report must be filed with the Honorable Eric R. Komitee within 14 days after the filing of this Report and Recommendation and, in any event, on or before **September 3, 2024**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

    **SO ORDERED**

Dated: Brooklyn, New York
       August 20, 2024

                                                        s/ James R. Cho
                                                        James R. Cho
                                                        United States Magistrate Judge